IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMOUNT DIVISION

| | |
|---|---|
| THE DUTRA GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, WILLIAM B. COWEN, in his official capacity as the Acting General Counsel of the National Labor Relations Board, MARVIN E. KAPLAN, in his official capacity as the Chairman of the National Labor Relations Board, DAVID M. PROUTY, in his official capacity as Board Members of the National Labor Relations Board, JILL H. COFFMAN, in her official capacity as a Regional Director for the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,<br><br>    Defendants. | Civil Action No. 1:25-cv-00090 |

**COMPLAINT FOR DECLARATION AND INJUNCTIVE RELIEF**

Plaintiff The Dutra Group, Inc. ("Dutra") brings this action against Defendants National Labor Relations Board ("Board" or "NLRB"), NLRB Acting General Counsel William B. Cowen ("Cowen"), NLRB Chairman Marvin E. Kaplan ("Kaplan"), Board Member David M. Prouty ("Prouty") (Kaplan and Prouty, collectively, "Board Members"), NLRB Regional Director Jill H. Coffman ("Coffman"), and Administrative Law Judge John Doe ("Doe"), for injunctive and declaratory relief and states as follows:

## INTRODUCTION

1. Dutra brings this suit for declaratory and injunctive relief because Defendants are presently pursuing and subjecting Dutra to an administrative proceeding that violates the United States Constitution and fundamental principles of due process.

2. Dutra will be able to demonstrate that it is entitled to injunctive and declaratory relief.

3. First, Dutra is likely to success on the merits of its constitutional claims that: the NLRB's administrative law judges ("ALJs") are unconstitutionally insulated from removal; the members of the Board are unconstitutionally insulated from removal; it is being deprived of its right to jury trial regarding purely legal remedies sought by the NLRB; and the structure of the NLRB violates the separation of powers and Dutra's due process rights.

4. Second, Dutra will show it is likely to suffer both economic and constitutional harms due to the remedies sought against it and the very nature of the NLRB's proceedings.

5. Third, Dutra will demonstrate that the balance of equities tips in its favor because it stands to be stripped of its constitutional rights while Defendants stand to lose nothing.

6. Fourth and finally, it is in the public's interest to establish constitutional proceedings.

7. Because it is likely to success on the merits, Dutra respectfully requests this court grant its Emergency Motion for Temporary Restraining Order.

## JURISDICTION AND VENUE

8. This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over Dutra's claims that fundamental aspects of the NLRB's structure violate the Constitution. *See Axon Enter., Inc. v. FTC*, 598 U.S.

175 (2023) (holding statutory review schemes do not displace district court's federal question jurisdiction to adjudicate corporation's constitutional challenge to administrative agency).

9. This Court has authority to grant declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Court's inherent equitable powers.

10. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity and a substantial part of the events giving rise to the claim occurred in this judicial district.

## PARTIES

11. Dutra, a privately held California corporation, is an industry-leading marine construction company that performs dredging and other marine construction projects in numerous ports, harbors, coastal areas, and other waterways throughout the United States.

12. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB "to prevent any person from engaging in any unfair labor practice." *See* 29 U.S.C. § 160.

13. Defendant Cowen is the Acting General Counsel of the NLRB. He is sued in his official capacity.

14. Defendant Kaplan is Chairman of the NLRB. He is sued in his official capacity.

15. Defendant Prouty is a Member of the NLRB. He is sued in his official capacity.

16. Defendant Coffman is a Regional Director for the NLRB. She is sued in her official capacity.

17. Defendant Doe is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceeding against Dutra. An ALJ has not yet been assigned to Dutra's NLRB proceeding and the ALJ's identity is unknown. Doe is sued in his official capacity.

## FACTS

18. Dutra provides vital services like maintaining navigational channels, supporting coastal restoration, and managing flood control. Much of its work is on government contract projects for heavy and civil engineering construction. Dutra uses dredges, crane barges, tugboats, barges, scows, workboats, and other boats for these projects.

19. Most of Dutra's employees that work on its dredges, boats, and equipment are represented by various locals for the International Union of Operating Engineers ("Operating Engineers") and covered by agreements Dutra has entered into with the Operating Engineers.

20. The Company's dredges generally work on a project basis with various barges and boats utilized in support of the dredges depending on the location and needs of the project.

21. Dutra owned and operated a hopper dredge named the *Columbia* from in or around October 2009 until it was decommissioned in or around January 2023.

22. During that period, Dutra and the International Organization of Masters, Mates & Pilots ("MM&P") entered into agreements regarding the terms and conditions of employment for personnel aboard the *Columbia*. The Company's recognition of MM&P in their agreements was limited to personnel employed aboard the *Columbia* and each agreement explicitly stated that it applied only to personnel employed aboard the *Columbia*. The term of the last agreements between Dutra and MM&P expired on March 31, 2024.

23. The *Columbia* worked on projects in several locations along the Gulf Coast, including, but not limited to, Galveston Harbor, Freeport Harbor, Brazo Harbor Island, and Sabine

Neches. At times, Dutra used its boats named the *Cape Anne* and *Gracie Jean* to ferry personnel and supplies from the nearest port to the *Columbia*.[1]

24. On July 28, 2023, MM&P filed a charge with the NLRB in case number 20-CA-322903 alleging that Dutra had violated Sections 8(a)(1) and (5) of the NLRA by failing and/or refusing to provide relevant information and unilaterally withdrawing recognition of a unit represented by MM&P. On January 3, 2024, Coffman approved MM&P's request to withdrawal the charge.

25. On December 20, 2023, Dutra laid off boat operators on the *Cape Anne* due to the completion of a project and lack of need for the boat's services at the time.

26. On February 8, 2024, MM&P filed a charge with the NLRB in case number 20-CA-335452 alleging that Dutra engaged in unfair labor practices in violation of the NLRA.

27. On February 9, 2024, Dutra laid off boat operators on the *Gracie Jean* due to the completion of a project and lack of need for the boat's services at the time.

28. On March 5, 2024, MM&P filed a first amended charge with the NLRB.

29. On April 5, 2024, MM&P filed a second amended charge with the NLRB.

30. On August 1, 2024, in response to a request for evidence letter from the NLRB, Dutra submitted a position statement and supporting documentation refuting MM&P's allegations.

31. On August 29, 2024, Dutra was notified that the case had been submitted to the NLRB's Division of Advice ("Division of Advice").

32. On November 18, 2024, Dutra was notified that the Division of Advice had directed the Region to issue a complaint against Dutra.

---

[1] A boat doing this type of work is commonly referred to as a crew boat or support boat.

33.　On December 20, 2024, on behalf of the General Counsel for the NLRB,[2] Coffman issued a Complaint and Notice of Hearing ("NLRB Complaint") alleging Dutra engaged in unfair labor practices in violation of the NLRA.

34.　The NLRB Complaint alleges, among other things, that MM&P is the exclusive collective-bargaining representative under Section 9(a) of the NLRA for a unit of employees which included boat operators servicing a dredge named the *Columbia* and other dredges. The NLRB Complaint claims that Dutra engaged in unfair labor practices in violation of the NLRA when it allegedly laid off the boat operators in the unit, refused to bargain with and withdrew recognition of MM&P as their exclusive collective-bargaining representative, and, later when the *Cape Anne and Gracie Jean* were needed for other projects, granted recognition to the Operating Engineers and transferred the boat operators work to employees represented by the Operating Engineers.

35.　The Notice of Hearing provides that a hearing will be conducted before an ALJ of the NLRB on July 8, 2025, and on consecutive days thereafter.

36.　On January 17, 2025, Dutra filed its Answer and Affirmative Defenses to the NLRB Complaint. In addition to other responses, Dutra denied the allegations of the NLRB Complaint.

### COUNT I – THE NLRB'S ADMINISTRATIVE LAW JUDGES ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

37.　Dutra incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

38.　Article II of the Constitution states that the President must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3; *see also Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

---

[2] At the time, the General Counsel for the NLRB was Jennifer Abruzzo ("Abruzzo"). On February 3, 2025, the President appointed Cowen as Acting General Counsel of the NLRB.

39. To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010).

40. ALJs function as inferior officers of an executive agency. *See* U.S. Const. art. II, § 2; *see also Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018); *see also Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]").

41. Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. SEC*, 34 F.4th 446, 464 (2022).

42. The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection] Board." 5 U.S.C. § 7521(a). In turn, by statute, members of the Merit Systems Protection Board are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

43. "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy,* 34 F.4th at 464.

44. Because ALJs can only be removed "for good cause…after opportunity for hearing," and the Merit Systems Protections Board members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated from the President's obligation to take care that the Laws be faithfully executed by at least two layers of for-cause removal protections. *See* 5 U.S.C. § 7521(a) and 5 U.S.C. § 1202(d).

45. ALJs are insulated from the President's oversight by at least two layers of for-cause removal protections. As the Supreme Court has held, "the added layer of tenure protection makes a difference…[a] second level of tenure protection changes the nature of the President's review…[and t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 495-96.

46. But for these unlawful removal restrictions, ALJs would be subject to removal by the President.

47. The statutes' provision of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution.

48. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191; *see also, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

49. Dutra is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Dutra is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

50. Moreover, without interim injunctive relief, Dutra will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

51. Dutra bears a strong likelihood of success on the merits for the reasons articulated above.

52. If the NLRB is not enjoined from proceeding against Dutra in the related unfair labor practice hearing, Dutra will be irreparably harmed.

53. The balance of equities tip in Dutra's favor because should the NLRB proceeding go forward, Dutra will lose its right to undergo a constitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enterp.*, 598 U.S. at 191.

54. The harm to Dutra, in the event injunctive and declaratory relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

55. It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

## COUNT II – BOARD MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

56. Dutra incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

57. The President has the power to appoint members of the Board. The NLRB consists of five Board members.[3] With the advice and consent of the Senate, the President appoints members of the Board to staggered, five-year terms. The President designates one Board member to serve as the Chairman. *See* 29 U.S.C. § 153(a).

58. However, the NLRA limits the President's executive authority to remove Board members. The President may only remove Board members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

59. Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA, a law that the President is obligated to faithfully execute.

---

[3] Currently, the Board only has two sitting Board members and, therefore, does not have a quorum as required by the NLRA to exercise its statutory authority. *See* 29 U.S.C. § 153(b); *New Process Steel*, 560 U.S. 674, 680-681 (2010).

60. The Board exerts executive authority in multiple ways. The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may…find necessary for the proper performance of its duties." 29 U.S.C. § 154.

61. The Board also has the executive power to prevent any person from engaging in an unfair labor practice, issue subpoenas, engage in rulemaking, conduct union representation elections, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. §§ 156, 160.

62. The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they must be exercises of—the "executive Power."'" *Seila Law LLC*, 591 U.S. at 197, n. 2.

63. But for these unlawful removal restrictions, members of the Board would be subject to removal by the President.

64. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc. v. FTC*, 598 U.S. at 191.

65. Dutra is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Dutra is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010).

66. Without interim injunctive relief, Dutra will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

67. Dutra bears a strong likelihood of success on the merits for the reasons articulated above.

68. If the NLRB is not enjoined from proceeding against Dutra in the related unfair labor practice hearing, Dutra will be irreparably harmed because it will have endured a proceeding led by Board Members who are unconstitutionally insulated from removal by the President.

69. The balance of equities tip in Dutra's favor because should the NLRB proceeding go forward, Dutra will lose its right to undergo a constitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter.*, 598 U.S. at 175.

70. It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

### COUNT III – NLRB ADJUDICATES PRIVATE RIGHTS WITHOUT A JURY TRIAL IN VIOLATION OF THE SEVENTH AMENDMENT TO THE CONSTITUTION

71. Dutra incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

72. The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

73. The Supreme Court interprets "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). The Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *SEC v. Jarkesy*, 603 U.S. 110 (2024) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)).

74. "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Id.* (emphasis added).

75. In other words, Dutra is entitled to a jury trial if its adversary seeks *legal* relief against it. As the Supreme Court held in *SEC v. Jarkesy,*, "it is well established that common law claims must be heard by a jury." *Id.* at 120. Moreover, "[o]nce such a suit 'is brought within the bounds of federal jurisdiction,' an Article III court must decide it with a jury if the Seventh Amendment applies." *Id.* at 127 (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

76. "Compensatory damages," or "monetary relief for all losses…sustained as a result of the alleged breach of…duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted).

77. The NLRA authorized the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

78. The statute authorizes *equitable* relief. The statute does not authorize *legal* relief—such as compensatory damages.

79. Despite this clear language, the Board has authorized its Regions to seek consequential or "compensatory" damages. *See Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022) (enf. denied in part and vacated in part, *Thryv Inc., v. NLRB*, Case No. 23-60132 (5th Cir. May 24, 2024)).

80. According to the Board, these damages may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from [a] retirement account;" compensation for the loss of a "car or [] home," if the discriminatee is unable to make loan or mortgage payments; "increased transportation or childcare costs;" or "out-of-pocket medical expenses." *Id.* at 15.

81. In an attempt to distance itself from the word "consequential" and avoid finding itself in violation of the Seventh Amendment, the Board explained:

> [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act…and our affirmative duty to rectify the harms caused by a respondent's unfair labor practice by attempting to restore the employee to the situation they would have been in but for that unlawful conduct.

*Id.* at 14.

82. Read differently, the Board authorized legal relief by calling it equitable relief so as to manipulate its authority and avoid Dutra's right to a jury trial.

83. The Fifth Circuit saw through the veil, referring to remedies requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as "novel, *consequential*-damages-like labor law remed[ies]." *See Thryv Inc., v. NLRB*, Case No. 23-60132 at *9 (5th Cir. May 24, 2024) (emphasis added).

84. However, in its decision, the Fifth Circuit did not discuss whether or not the NLRB could continue to seek these novel consequential damages.

85. The NLRB Complaint in the underlying administrative matter seeks "all other relief as may be just and proper to remedy the unfair labor practices alleged," which is a thinly veiled way to encompass consequential damages of an unspecified amount against Dutra.

86. The Region continues to pursue consequential damages against employers, including Dutra.

87. The fact that the underlying administrative complaint also seeks equitable relief does not strip Dutra of its jury-trial right. *See Jarkesy*, 34 F.4th at 454 ("The Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims.").

88. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

89. Dutra is entitled to declaratory relief to ensure that it may have the opportunity to present its case against consequential damages to a jury of its peers.

90. Without interim injunctive relief, Dutra may be ordered to pay damages without the appropriate safeguards a jury provides.

91. Dutra bears a strong likelihood of success on the merits for the reasons articulated above.

92. If the NLRB is not enjoined from proceeding against Dutra in the related unfair labor practice hearing, Dutra will be irreparably harmed because it may be forced to pay damages that are not permitted as determined in a non-Article III court setting.

93. The balance of equities tips in Dutra's favor because it stands to suffer both economic and constitutional harms while Defendants stand to lose nothing.

94. It is in the public interest to remedy the Board's unconstitutional method of recovering damages from employers.

### COUNT IV – THE BOARD'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL AUTHORITY AND POWER VIOLATES THE FIFTH AMENDMENT TO THE CONSTITUTION

95. Dutra incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

96. The Fifth Amendment to the Constitution states that "[n]o person shall be . . . deprived of life, liberty or property without due process of law[.]" U.S. CONST. amend. V.

97. This principle applies to administrative proceedings before executive agencies. *See, e.g., Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("[P]rocedural due process is applicable to

the adjudicative administrative proceeding involving the differing rules of fair play, which through the years, have become associated with different types of proceedings."); *see also SEC v. Jarkesy*, 603 U.S. at 143 (Gorsuch, concurring) ("The shift from a court to an ALJ didn't just deprive Mr. Jarkesy of the right to an independent judge and jury. He also lost many of the procedural protections our courts supply in cases where a person's life, liberty or property is at stake.").

98. Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with another branch than the Chief Executive…can share with the Judiciary the veto power." *Id.* at 483 (citing *United States v. Nixon*, 418 U.S. 683, 704 (1974)) (internal citations omitted).

99. The NLRB is an executive agency. 29 U.S.C § 153(a). It is not a part of the judiciary or legislature.

100. The NLRB unconstitutionally combines executive, legislative and judicial authority in one body, violating the separation of powers. "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

101. Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with the legislature or executive. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011). But, the Board has taken for itself a fundamentally judicial task of overseeing the litigation of parties' private rights.

102. The Board's Members have also claimed for themselves the fundamentally judicial task of interpreting the Act, a task that, in light of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) they can no longer claim is part of a legitimate

exercise of executive power. *Id.* at 2257-2258 (reiterating that the interpretation of the law is exclusively the role of the judiciary); *id.* at 2274 (Thomas, J, concurring) (noting that executive agencies' issuance of purportedly binding regulations under the guise of interpreting an ambiguous statute is an unconstitutional exercise of both judicial and legislative power).

103. The NLRB's proceedings also lack many of the elements that have traditionally come to be associated with just cause.

104. The Board's processes do not allow for prehearing discovery for a respondent in an unfair labor practice proceeding. *See* NLRB Casehandling Manual, Part One, Unfair Labor Practice Proceedings, Sect. 10292.4 (January 2025) ("Casehandling Manual") ("The Federal Rules of Civil Procedure providing for compulsory pretrial discovery have been held not applicable to Board proceedings. Any attempt to use such discovery should be resisted.") (citations omitted).

105. The Board, however, gives the government the distinct advantage of access to documents, witness statements, and other information gathered during the investigation of an unfair labor practice charge. *See, e.g.*, Casehandling Manual, Sect. 10334 ("The trial attorney [prosecuting the case on behalf of the General Counsel] has an initial obligation to become familiar with the contents of all evidence in the investigative file."). This advantage is bolstered by the Board's processes and practices with respect to its subpoena power, including its power to use investigatory subpoenas. *See id.* at Sect. 11770-11808.

106. By contrast, the Board's processes give a non-Board litigant few (if any) means of obtaining information to prepare its defense prior to trial and defend itself against the Board's prosecution of an unfair labor practice case.[4]

---

[4] The limitations on a party's ability to prepare its defense imposed by the Board are even more draconian than those that gave Justices Gorsuch and Thomas concern in their *Jarkesy* concurrence. In the SEC proceedings at issue in that case, ALJ's enjoyed far more latitude to issue subpoenas, and parties could take limited depositions prior to hearing. *Jarkesy*, 144 Sup. Ct. at 2141 (Gorsuch, J., concurring).

107. The NLRB's process in connection with Coffman's order for a prehearing deposition to be taken suffers from the same inherent conflict of interest as any proceeding before an agency's in-house ALJ – Coffman, her designated representative, and other attorneys or agents for the Board involved in the process ultimately are a part of, and paid by, the same agency bringing the proceedings. *See Jarkesy*, 144 Sup. Ct. at 2141 (Gorsuch, J., concurring) ("ALJ's . . . remain servants of the same master [as the lawyers who pursue charges on behalf of the agency]—the very agency tasked with prosecuting individuals …. This close relationship, as others have long recognized, can make it extremely difficult, if not impossible, for the ALJ to convey the image of being an impartial factfinder.") (internal citations and quotations omitted).

108. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

109. Dutra is entitled to declaratory relief to ensure that its due process rights are not violated.

110. Without interim injunctive relief, Dutra will be required to undergo an unconstitutional proceeding without due process.

111. Dutra bears a strong likelihood of success on the merits for the reasons articulated above.

112. If the NLRB is not enjoined from proceeding against Dutra in the related unfair labor practice hearing, Dutra will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of the separation of powers.

113. The balance of equities tips in Dutra's favor because, should the NLRB proceeding go forward, Dutra will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter., Inc.*, 598 U.S. at 179, 192.

114. It is in the public interest to remedy the unconstitutional procedures here in order to protect Americans' constitutional rights.

## REQUEST FOR RELIEF

WHEREFORE, Dutra respectfully requests that the Court order the following relief and enter judgment:

1. Declaring that:

    a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a) are unconstitutional;

    b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional;

    c. The NLRB proceedings against Dutra deprive it of its constitutional right to a trial by jury; and

    d. The NLRB's processes violate the Fifth Amendment's guarantees of due process.

2. Preliminarily enjoining Defendants from subjecting Dutra to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

  4. Awarding Dutra its costs and expenses incurred in bringing this action, including but not limited to, reasonable attorneys' fees; and

  5. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

            **BLANK ROME LLP**

            */s/ Audrey F. Momanaee*
            Audrey F. Momanaee
            Texas Bar No. 24055993
            717 Texas Avenue, Suite 1400
            Houston, TX 77002
            Tel. 713-632-8613
            audrey.momanaee@blankrome.com

            Andrew I. Herman, Esquire
            Pennsylvania Bar No. 317094
            (*pro hace vice* motion forthcoming)
            One Logan Square
            130 North 18th Street
            Philadelphia, PA 19103-6998
            Tel. 215-569-5574
            Fax. 215-832-5822
            andrew.herman@blankrome.com

            *Attorneys for Plaintiff*
            *The Dutra Group*