**UNITED STATES DISTRICT COURT**       **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| THE DUTRA GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:25-CV-90 |
| | § | |
| NATIONAL LABOR RELATIONS BOARD, | § | |
| WILLIAM B. COWEN, MARVIN E. | § | |
| KAPLAN, DAVID M. PROUTY, JILL H. | § | |
| COFFMAN, JOHN DOE, and GWYNNE A. | § | |
| WILCOX, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) or, Alternatively, 28 U.S.C. § 1404(a) and Brief in Support (#12), wherein Defendants[1] request that the court transfer this case to the Northern District of California. Plaintiff The Dutra Group ("Dutra") filed a response in opposition to transfer (#23); Defendants filed a reply (#26); and Dutra filed an amended sur-reply (#31). Having considered the pending motion, the submissions of the parties, and the applicable law, the court is of the opinion that the motion should be DENIED.

---

[1] Defendants are the National Labor Relations Board ("NLRB"), NLRB Acting General Counsel William B. Cowen ("Cowen"), NLRB chairman Marvin E. Kaplan ("Kaplan"), Board Member David M. Prouty ("Prouty"), NLRB Regional Director Jill H. Coffman ("Coffman"), and Administrative Law Judge John Doe ("Doe") (collectively, "Defendants"). Defendant NLRB is an administrative agency, headquartered in Washington, D.C.

I.    Background

This action arises from an Unfair Labor Practices ("ULP") charge filed in NLRB's Region 20 against Dutra.[2]  Dutra is a California-based marine construction company that performs dredging and other marine construction projects in numerous ports, harbors, coastal areas, and other waterways throughout the United States.  Dutra owned and operated a hopper dredge, the *Columbia*, from approximately October 2009 until it was decommissioned in approximately January 2023.  During this period, Dutra and the International Organization of Masters, Mates, & Pilots ("MM&P") entered into agreements regarding the terms and conditions of employment for personnel aboard the *Columbia*.  The term of the last agreements between Dutra and MM&P expired on March 31, 2024.  The *Columbia* worked at several locations in the Eastern and Southern Districts of Texas, occasionally using its crew boats, the *Cape Anne* and the *Gracie Jean*, to ferry personnel and supplies from the nearest port to the *Columbia*.

On January 17, 2023, Dutra informed MM&P that the *Columbia* was being retired because it was no longer feasible to operate safely but that the discharged crew members would receive an appreciation payment.  Five months later, on May 9, 2023, MM&P solicited Dutra for recognition as the collective bargaining representative for personnel aboard the *Stuyvesant*, a self-propelled hopper dredge owned by Dutra, and any other similar vessels that may be built or acquired by Dutra.   In addition, MM&P sought to clarify and memorialize the ongoing recognition and terms of employment for MM&P personnel employed aboard Dutra's hopper dredge support vessels.  MM&P subsequently engaged in efforts to organize the *Stuyvesant*'s crew members, including while the dredge was working on the Sabine-Neches Waterway Channel Improvement Project in

---

[2] Region 20 is based in San Francisco, California.

Sabine Pass, Texas.[3]  On July 28, 2023, MM&P filed a petition with the NLRB seeking to represent all crew members employed on Dutra's hopper dredges.  Correspondingly, an MM&P representative traveled to engage with the *Stuyvesant* crew members at the Sabine Pass Port Authority, in the Eastern District of Texas, during crew rotations.  On September 13, 2023, at the direction of Coffman, the NLRB announced that it would be conducting an election for the *Stuyvesant* crew members at the Port of Port Arthur, which took place on September 21, 2023, and at Port City Partners in Sabine Pass on October 5, 2023.  The *Stuyvesant* crew members voted 29 to 4 against being represented by MM&P.  Dutra maintains that these elections occurred in the Eastern District of Texas during the Sabine-Neches Waterway Channel Improvement Project.

On December 20, 2023, Dutra laid off boat operators on the *Cape Anne* allegedly due to the completion of the project and lack of need for the boat's services at the time.  MM&P filed a second charge with the NLRB on February 8, 2024, alleging that Dutra engaged in unfair labor practices in violation of the NLRA by laying off the boat operators of the *Cape Anne*.  On February 9, 2024, Dutra laid off the boat operators on the *Gracie Jean* for the same alleged reason—the completion of the project and the lack of need for the boat's services.  Dutra contends that two of the *Gracie Jean* boat operators were laid off in the Eastern District of Texas after overseeing the loading of the *Gracie Jean* onto a truck where it would be transported to Florida for repairs.

---

[3] On July 28, 2023, MM&P filed a charge with the NLRB alleging that Dutra had violated Sections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA") by failing or refusing to provide relevant information and unilaterally withdrawing recognition of a unit represented by the MM&P.  MM&P later requested to withdraw that charge, however, which was approved on January 3, 2024.

MM&P filed a first amended charge and second amended charge with the NLRB on March 5, 2024, and April 5, 2024, respectively, alleging that the February 9, 2024, layoffs were retaliatory actions for the original charge.  On April 16, 2024, the NLRB representative investigating the charge sent Dutra a letter requesting evidence regarding the boat operator layoffs and alleged retaliation.  In response, Dutra submitted a position statement and supporting documentation on August 1, 2024, refuting MM&P's allegations.  The case was then submitted to the NLRB's Division of Advice, which directed Region 20 to issue a complaint against Dutra.

On December 20, 2024, Coffman issued the ULP Complaint and Notice of Hearing for a hearing to be conducted before an Administrative Law Judge ("ALJ") of the NLRB in San Francisco, California.  The ULP Complaint alleges, among other things, that:

> Dutra refused to bargain with and withdrew recognition of the MM&P as the exclusive Section 9(a) collective-bargaining representative for boat operators employed by Dutra who service the hopper dredge *Columbia* and other dredges, unlawfully granted recognition and transferred work to Local 25[4] and discriminatorily laid off boat operators on the crew boats *Cape Anne* and *Gracie Jean*, all of in (alleged) retaliation because MM&P had tried to organize the crew members of another Dutra dredge, the *Stuyvesant*.

Dutra denied the allegations of the ULP complaint, contending that five of the six boat operators were laid off because the work on their dredges had been completed, while the sixth operator had accepted a different position at Dutra prior to the layoffs.

On February 26, 2025, Dutra filed its Complaint (#1) for declaratory and injunctive relief against Defendants.  Dutra claims that Defendants are subjecting it to an unconstitutional administrative proceeding that violates due process.  Specifically, Dutra avers the proceedings

---

[4] Local 25 is also known as the International Union of Operating Engineers, Local 25.

violate Article II of the United States Constitution as well as the Fifth and Seventh Amendments in that:

> (a) the NLRB's administrative law judges ("ALJs") are unconstitutionally insulated from removal in contravention of Article II of the Constitution; (b) the members of the Board are unconstitutionally insulated from removal in contravention of Article II of the Constitution; (c) it is being deprived of its right to jury trial regarding purely legal remedies sought by the NLRB in violation of the Seventh Amendment; and (d) the structure of the NLRB violates the separation of powers and Dutra's due process rights under the Fifth Amendment.

On the same day, Dutra filed an Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction (#2). The present Motion to Transfer Venue (#12) was subsequently filed on March 6, 2025. Consequently, the court held in abeyance and suspended further briefing on the Emergency Motion, pending the court's resolution of the present Motion. On March 19, 2025, Coffman issued an order rescheduling the hearing before an ALJ from July 8, 2025, to September 22, 2025. Dutra filed a First Amended Complaint on March 24, 2025, providing additional facts that it contends demonstrate the propriety of venue in the Eastern District of Texas. Defendants, however, assert that the amendment is untimely and not properly before the court.

II.    Analysis

A.    Dutra's First Amended Complaint

As a preliminary matter, the court will consider whether Dutra's First Amended Complaint (#22) is properly before the court. Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1). Defendants argue that their Motion to Transfer Venue was "brought in lieu of a motion to dismiss for proper venue, *see* FED. R. CIV. P. 12(b)(3)" and stated that, "in the event that this Court deems transfer inappropriate, dismissal would be warranted." Thus, Defendants maintain that Dutra's amended complaint is not properly before the court because it was not filed within 21 days of service of its Complaint under Rule 15(a)(1)(A).

Although the relief Defendants seek is a transfer pursuant to 28 U.S.C. § 1406(a) or, in the alternative, 28 U.S.C. § 1404(a), their motion may be construed as a 12(b)(3) motion. Under § 1406(a), if the plaintiff filed suit in a district or division where venue is improper, that court *shall dismiss the case*, or, in the interest of justice, transfer the case to a district where it could have been brought. 28 U.S.C. § 1406(a). Consequently, several courts have treated motions to transfer under § 1406(a) similarly to 12(b)(3) motions. *See, e.g.*, *Kapitus Servicing, Inc. v. Verma*, No. 3:23CV295 (RCY), 2023 WL 8788950, at *1 (E.D. Va. Dec. 19, 2023) ("Rule 12(b)(3) is the 'proper mechanism for defendants seeking to raise an objection to improper venue' under 28 U.S.C. § 1406(a)." (quoting *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 924 (E.D. Va. 2017))); *Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 232 (D.D.C. 2020) (holding that a § 1406 motion is premised on the defense of improper venue under Rule 12(b)(3)). Motions to transfer venue under § 1404(a), however, are often treated differently. *See Rodriguez*, 502 F. Supp. 3d at 233 (drawing a distinction between § 1404 transfers and § 1406 transfers and noting that § 1404 motions do not come within Rule 12); *Liu v. Mayorkas*, 737 F. Supp. 3d 1, 4 (D.D.C. 2024) (noting that sections 1404(a) and 1406(a) are

mutually exclusive). To the extent that Defendants argue venue is improper in this district and should be transferred under § 1406(a), the court construes the motion as a 12(b)(3) motion. Thus, because Defendants' Motion to Transfer Venue was filed on March 6, 2025, and Dutra filed its First Amended Complaint on March 24, 2025, Dutra's amended pleading was filed within 21 days of Defendants' motion to transfer the case for improper venue. *See* FED. R. CIV. P. 15(a)(1)(B). The amended complaint is therefore timely.

Even if Dutra's First Amended Complaint was untimely, the Federal Rules of Civil Procedure provide that "[t]he court should freely give leave" to amend pleadings "when justice so requires." FED. R. CIV. P. 15(a)(2); *accord Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020); *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 740 (5th Cir. 2019); *Brown v. Taylor*, 911 F.3d 235, 246 (5th Cir. 2018). The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. *DeGruy v. Wade*, 586 F. App'x 652, 655 (5th Cir. 2014) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)); *Tex. Indigenous Council v. Simpkins,* 544 F. App'x 418, 421 (5th Cir. 2013). The language of Rule 15(a) "evinces a bias in favor of granting leave to amend." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (quoting *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2017)); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018). Where the plaintiff fails to submit a motion for leave to file an untimely amended pleading, the court may, *sua sponte*, allow the plaintiff to file such pleading. *See, e.g.*, *Ruiz de Balderas v. ETX Successor Athens*, No. 6:19-CV-58-JDK-KNM, 2020 WL 1478563, at *1 (E.D. Tex. 2020) (granting leave to amend *sua sponte*); *Flores v. Act Event Servs., Inc.*, 55

7

F. Supp. 3d 928, 940-41 (N.D. Tex. 2014) (same).  Thus, finding that it is in the interest of justice to do so, the court will treat Dutra's First Amended Complaint as the operative pleading.

B.    Proper Venue Under 28 U.S.C. § 1391(e)

Next, the court considers whether venue is proper in the Eastern District of Texas.  The general venue statute, 28 U.S.C. § 1391, governs whether venue is proper or improper in a district.  Venue in civil actions against federal officers and agencies is governed by 28 U.S.C. § 1391(e).  The statute provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).

Generally, courts in the Fifth Circuit have held that, once the defendant has challenged the forum choice, the plaintiff bears the burden of proof to establish that the venue it chose is proper. *See, e.g.*, *UOP L.L.C. v. Exterran Energy Sols., L.P.*, No. MO:20-CV-233-DC, 2021 WL 4096560, at *2 (W.D. Tex. Aug. 26, 2021); *Umphress v. Hall,* 479 F. Supp. 3d 344, 348 (N.D. Tex. 2020); *Broadway Nat'l Bank v. Plano Encryption Techns., LLC*, 173 F. Supp. 3d 469, 473 & n.2 (W.D. Tex. 2016).  "To hold otherwise would circumvent the purpose of the venue statutes—it would give plaintiffs an improper incentive to attempt to initiate actions in a forum favorable to them but improper as to venue." *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458 (S.D. Tex. 1996) (quoting *Delta Airlines, Inc. v. W. Conf. of Teamsters Pension Tr. Fund*, 722 F. Supp. 725, 727 (N.D. Ga. 1989)).  The plaintiff, however, only needs to make

8

a *prima facie* showing. *Beckman v. Tran*, No. 2:23-CV-00034, 2023 WL 10554732, at *5 (S.D. Tex. Dec. 27, 2023). When determining whether venue is proper, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007); *see United Servs. Auto. Ass'n v. Truist Bank*, No. 222CV00291JRGRSP, 2023 WL 2871060, at *1 (E.D. Tex. Apr. 8, 2023). Additionally, the court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by defendants in support of a motion, or by a plaintiff in response to the motion. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008); *see United Servs. Auto. Ass'n*, 2023 WL 2871060, at *1 (holding that, regarding transfer, "the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant").

Because no party alleges that it resides in the Eastern District of Texas, the court turns to consider whether a substantial part of the events or omissions giving rise to the claim occurred in this district.[5] 28 U.S.C. § 1391(e)(1)(B). Courts have considerable discretion in deciding whether venue is proper under 28 U.S.C. § 1391(e)(1)(B). The statute does not require the court to determine the best venue, only whether or not venue is proper in the pending cause of action. *Id.* Venue may be proper in multiple locations under § 1391(e)(1)(B). *See Hawbecker v. Hall*, 88 F. Supp. 3d 723, 731 (W.D. Tex. 2015); *Umphress*, 479 F. Supp. 3d at 351; 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE

---

[5] According to Defendants' Motion to Transfer, Dutra is a resident of the State of California and all Defendants reside in either Washington, D.C., or the State of California.

9

§ 3806 (4TH ED.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the occurrence of the claim."). "Therefore, even if another district's contacts with the controversy are more substantial than this district, the court need determine only whether substantial events occurred in this district." *Seariver*, 952 F. Supp. at 459.

The United States Court of Appeals for the Fifth Circuit has not spoken directly on how broadly the court should view the events giving rise to the claim when determining whether venue is proper. Consequently, several courts have looked outside this circuit for guidance. *See, e.g.*, *Safety Nat. Cas. Corp. v. U.S. Dep't of Treasury*, No. CIV.A. H-07-643, 2007 WL 7238943, at *3 (S.D. Tex. Aug. 20, 2007). Regarding the scope of relevant events, the First Circuit has held that in general venue cases, "[we] look, therefore, not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim."[6] *Id.* (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)); *see Udeobong v. Hawkins*, No. CIV.A. H-08-1833, 2009 WL 7326072, at *2 (S.D. Tex. Feb. 19, 2009) (looking to the First, Second, Third, and Fourth Circuits in deciding to "focus its analysis on the chain of events that led up to and includes the claim at issue rather than a narrow focus on the actions of the defendant"). Furthermore, "[s]ubstantiality for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 720

---

[6] This case examines the language of the general venue statute, 28 U.S.C. § 1391(b)(2), which is identical to that found in § 1391(e)(1)(B). 28 U.S.C. § 1391(b)(2) (permitting venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

10

(W.D. Tex. 2013) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)); *accord Mango Eleven, L.L.C. v. Bharwani*, No. SA-24-CV-1477-DAE, 2025 WL 1914889, at *4 (W.D. Tex. May 23, 2025).  In addition, in ascertaining whether venue is proper under the statute, "the court looks to the defendant's conduct, and where that conduct took place." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir. 1995)); *accord Munro v. U.S. Copyright Off.*, No. 621CV00666ADAJCM, 2022 WL 3566456, at *2 (W.D. Tex. May 24, 2022), *adopted by* No. 621CV00666ADAJCM, 2022 WL 17400772 (W.D. Tex. Sept. 15, 2022).  The court may also consider, however, the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities.  *Umphress*, 479 F. Supp. 3d at 352.

Dutra contends that venue is proper in this district under § 1391(e) because several events occurred in the Eastern District of Texas that culminated in the ULP Complaint, administrative proceedings, and the subsequent constitutional challenges.  Specifically, Dutra alleges that MM&P's efforts to organize the crew members occurred while the *Stuyvesant* was working in this judicial district on the Sabine-Neches Waterway Channel Improvement Project.  These efforts entailed MM&P representatives visiting the *Stuyvesant* crew members in Port Arthur.  Moreover, the NLRB-conducted elections in September and October 2023 occurred in this district.  Dutra avers that it was MM&P's efforts to win the election in this district that prompted Dutra's purported retaliatory actions giving rise to the ULP allegations.  Dutra also argues that venue is proper here because the some of the alleged retaliatory layoffs occurred in the Eastern District of Texas.  The NLRB's ULP complaint alleges that "[s]ix Dutra employees [boat operators] were unlawfully laid off in retaliation for their statutorily-protected union activities."  Dutra contends

that two of the six crew members were laid off in the Eastern District of Texas, as they remained in the district after the project concluded to oversee the loading of the *Gracie Jean* onto a truck where it would be transported to Florida for repairs.[7]

Defendants argue, however, that the events giving rise to Dutra's claims are based on administrative proceedings outside of Texas which happen to arise from a labor dispute, and that Dutra's claims target the NLRB's administrative process, not the merits of the ULP complaint. Alternatively, Defendants claim that the union organizing events surrounding the *Stuyvesant* only have a "tangential connection" with the claims raised in this case. Defendants also contend that the layoffs and election do not constitute a substantial connection to this district. The court disagrees. In *Space Expl. Techs. Corp. v. Nat'l Labor Rel's Bd.* ("*SpaceX*"), the plaintiff similarly claimed that the NLRB-initiated administrative proceedings against it for unfair labor practices were unconstitutional. When faced with a motion to transfer venue, the *SpaceX* court considered the underlying events giving rise to the ULP Complaint, even though the claims at bar were constitutional in nature. No. 1:24-CV-00001, 2024 WL 974568, at *1-2 (S.D. Tex. Feb. 15, 2024) ("Plaintiff sued Defendants, claiming that the proceeding and the structure of the NLRB are unconstitutional."). While the court found that venue was not proper in the Southern District of Texas, it came to its conclusion not only by looking at the fact that the administrative proceedings were taking place in California, but by reasoning that "[n]early all the alleged ULP[s]

---

[7] Dutra asserts in the Surreply (#31) that, of the remaining four boat operators, the two Cape Anne boat operators were laid off in New York when a New York Harbor Project was completed. Another boat operator had returned home on February 6, 2024, so he was not in the district at the time of layoffs. Finally, the fourth boat operator took a different position with Dutra in January, so he was no longer a boat operator at the time of the layoffs.

in the administrative complaint occurred in [California]."[8]  *Id.*; *see Alpha Servs., L.L.C. v. Looman*, No. CV 23-2988, 2023 WL 6795545, at *5 (E.D. La. Oct. 13, 2023) (noting in its venue analysis that at least one of the alleged violations giving rise to the underlying administrative proceedings occurred in the State of Washington).

In a factually analogous case, *Amazon Servs. LLC v. NLRB* ("*Amazon*"), the court held that venue was improper in the Western District of Texas.  SA-24-CV-01000-XR, 2024 WL 4977179, at *5 (W.D. Tex. Sept. 29, 2024), *appeal dismissed*, 136 F.4th 577 (5th Cir. 2025).  As in *SpaceX* and the case at bar, the plaintiff brought suit against the NLRB and other related officials, seeking relief from allegedly unconstitutional administrative proceedings.  *Id.*  In considering alternative proper venues, the court held that an NLRB-conducted election in New York constituted "a substantial part of the events giving rise to Amazon's claim," making the Eastern District of New York an appropriate venue.  *Id.* (noting that "any action conducted in Region 28 would not have occurred without the petition for election in New York and the Election (voted on by over 4500 individuals) that took place in New York").

Here, in contrast to *SpaceX* and *Amazon*, a substantial part of the events giving rise to the claim occurred in Texas.  It is undisputed that an NLRB-conducted election took place in the Eastern District of Texas for the *Stuyvesant* crew members.   Furthermore, MM&P's organizational efforts in this district allegedly culminated in the termination of six crew

---

[8] The *SpaceX* case is still pending in the Southern District of Texas, as the Fifth Circuit vacated the district court's denial of reconsideration and transfer to the Northern District of California. *See Space Expl. Techs., Corp. v. Nat'l Lab. Rels. Bd.*, No. 24-40315, 2024 WL 3765764 (5th Cir. Aug. 9, 2024).  It did so, however, without prejudice to the renewal of the motion to transfer after the issuance of mandate in the current appeal of the district court's denial of a preliminary injunction. *Id.*  Thus, the Fifth Circuit did not consider the merits of the transfer order, which has been stayed pending mandate.  Despite its complicated procedural history, the court finds this case to be persuasive regarding the issue of venue.

members—two of whom were terminated while physically in this district.  *See Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 722 (holding "that three of the nine construction projections were located in the Western District of Texas is sufficient to satisfy the 'substantiality' requirement ").  Dutra's purported motive for these terminations, as well as the terminations themselves, are a crucial part of the NLRB proceeding and thus the claims at bar.

Dutra additionally contends that venue is proper in the Eastern District of Texas because "the NLRB seeks to impose a regulatory burden on Dutra's operations and personnel for projects in this district and other Texas coast locations."  Dutra asserts that Defendants seek to regulate its conduct in the Eastern District of Texas by requiring "the reinstatement of the laid-off boat operators" and forcing it "to recognize and bargain with MM&P as the representative of a unit including boat operators servicing the *Columbia* and other dredges."  These regulations would allegedly impose a substantial burden on Dutra because its dredges operate in multiple locations throughout the United States.  Defendants contend, however, that potential future work is not sufficient for venue purposes under this statute.

Courts in the Fifth Circuit have held that under § 1391(e)(1), venue "is proper where an unlawful rule imposes its burdens." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023) (internal quotations omitted); *see Umphress*, 479 F. Supp. 3d at 351-52; *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (injunction terminated on other grounds).  Similarly, attempts to regulate conduct in a district may be sufficient to establish venue in that district.  *See, e.g., Seariver*, 952 F. Supp. at 460-61 (holding that venue was improper in Texas but proper in Alaska because the challenged statute only regulated activities in Alaska); *In re SpaceX Expl.*, 96 F.4th at 736-737 (Elrod, J.,

dissenting) (maintaining that "[v]enue is proper in the Southern District of Texas because NLRB seeks to regulate SpaceX's conduct in that district" and "the administrative proceedings initiated by NLRB would regulate SpaceX's operations and policies everywhere, including the Southern District of Texas").  Section 1391(e)(1)(B) analysis, however, does not take into account future events that may or may not occur.  *See Seariver*, 952 F. Supp. at 459 (rejecting venue based on claimed possibility of future injury in the district); *Amazon Servs*, No. SA-24-CV-01000-XR, 2024 WL 4977179, at *4 (finding unpersuasive plaintiff's arguments as to why venue is proper under § 1391(e)(1)(B) as it speculated about future events that had not occurred).

Here, while the NLRB seeks to regulate Dutra's business operations, this purported injury has not yet occurred, as the administrative proceedings are still pending.  Although Dutra could argue that it is being penalized for actions it already took, namely, its failure to recognize MM&P as the exclusive bargaining representative of its crew members and the termination of six employees, the only action taken thus far by the NLRB is the issuance of the complaint.  Furthermore, even if Dutra was forced to reinstate the discharged crew members, none of them live in the district and it is uncertain whether they would return to work here, as the dredges are assigned to projects in various states.  Dutra's assertion that the remedies sought would create a regulatory burden on its "future projects in this district" is too speculative.  Thus, the court finds Dutra's argument regard regulatory impact unpersuasive.  Taking into account, however, the underlying events culminating in the ULP Complaint, the court agrees with Dutra that a substantial part of the events giving rise to the claim occurred in the Eastern District of Texas.  Accordingly, the court finds that venue is proper pursuant to § 1391(e)(1)(B).

C.    Transfer of Venue

1.    Legal Standard

When the selected venue is proper, a motion to transfer venue from one district or division to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 307 n.1 (5th Cir. 2008) (en banc); *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004); *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *Thompson v. Thompson*, 617 F. Supp. 3d 471, 476 (E.D. La. 2022); *Seagen, Inc. v. Daiichi Sankyo Co., Ltd.*, 546 F. Supp. 3d 515, 521 (E.D. Tex. 2021). The purpose of this statute "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26-27 (1960)); *accord In re Rolls Royce Corp.*, 775 F.3d 671, 678 n.31 (5th Cir. 2014); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651, 654 (E.D. Tex. 2018).

Under § 1404(a), the movant has the burden to show good cause for a change of venue. *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)); *Volkswagen II*, 545 F.3d at 314 n.10 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)); *Paschal v. Perry's Rests., Ltd.*, No. 1:22-CV-027-RP, 2022 WL 1284565, at *2 (W.D. Tex. Apr. 29, 2022). In order to show good cause, the moving party "must satisfy the statutory requirements and clearly demonstrate that a transfer

is for the convenience of parties and witnesses, in the interest of justice." *Volkswagen II*, 545 F.3d at 315 (internal quotations omitted); *see Def. Distributed*, 30 F.4th at 433; *Thompson*, 617 F. Supp. 3d at 476. At a minimum, "good cause" requires the movant to "clearly demonstrate" that its chosen venue is "clearly more convenient," not "more likely than not to be more convenient." *In re Clarke,* 94 F.4th at 508 (quoting *Volkswagen II*, 545 F.3d at 315). "Accordingly, to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *Id.* "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315; *Def. Distributed*, 30 F.4th at 433; *Thompson*, 617 F. Supp. 3d at 476. "When the movant demonstrates that the transferee venue is clearly more convenient" however, then "it has shown good cause and the district court should therefore grant the transfer." *Volkswagen II*, 545 F.3d at 315; *Tricon Precast, Ltd. v. Easi Set Indus., Inc.*, 395 F. Supp. 3d 871, 878 (S.D. Tex. 2019).

"There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" *Volkswagen II*, 545 F.3d at 311 (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)); *see Van Dusen*, 376 U.S. at 616; *Volkswagen I*, 371 F.3d at 203; *Paschal*, 2022 WL 1284565, at *2. "[T]he trial court must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 133 F. Supp. 2d 673, 676 (E.D. Tex. 2001) (citing *Radio Santa Fe, Inc. v. Sena*, 687 F. Supp. 284, 287 (E.D. Tex. 1988)); *accord Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 28 (1988); *Haynes v. Turner Bass & Assocs.*, No. 4:19-CV-766-ALM-CAN, 2020 WL 10353894, at *2 (E.D. Tex. Apr. 9, 2020).

"The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *accord Volkswagen II*, 545 F.3d at 312; *Volkswagen I*, 371 F.3d at 203; *see Haynes*, 2020 WL 10353894, at *2.  As previously noted, venue in civil actions against federal officers and agencies is governed by 28 U.S.C. § 1391(e), which provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  In the case at bar, the Northern District of California is a district where the action might have been brought, as several Defendants as well as Dutra reside there, and the administrative proceedings at issue are pending in Region 20, which is located in the Northern District of California.

When, as here, the movant meets this threshold requirement of establishing venue in the proposed transferee district, motions to transfer are adjudicated by a district court through "individualized, case-by-case consideration[s] of convenience and fairness." *Van Dusen*, 376 U.S. at 622; *accord Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir. 2001); *Gotraux v. Stevens Transport, Inc.,* No. 1:23-CV-00159, 2023 WL 12098400 at *2 (E.D. Tex. 2023); *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 458 (N.D. Tex. 2017).  "In considering a motion to transfer venue, courts weigh factors relating to (1) the litigants'

18

convenience and (2) the public interest in the fair and efficient administration of justice." *Humana Inc. v. Becerra*, No. 4:23-CV-00909-O, 2024 WL 4579924, at *3 (N.D. Tex. June 7, 2024) (quoting *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 509 (E.D. Tex. 2003)); *see Volkswagen II*, 545 F.3d at 315. "The determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc.*, 358 F.3d at 340); *accord In re Radmax, Ltd.*, 720 F.3d 285, 287-88 (5th Cir. 2013); *Volkswagen II*, 545 F.3d at 315; *Fall v. Rahim*, No. 4:24-CV-2464, 2024 WL 5170751 at *2 (S.D. Tex. 2024); *Thompson*, 617 F. Supp. 3d at 477.

"Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315; *accord Thompson*, 617 F. Supp. 3d at 477. Private interest factors, which involve the preferences and conveniences of the parties and witnesses, include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203); *see Def. Distributed*, 30 F. 4th at 433-34; *In re Archer Directional Drilling Servs., LLC*, 630 F. App'x 327, 328 (5th Cir. 2016); *Action Indus., Inc.*, 358 F.3d at 340 n.8. Public interest factors address broader objectives, such as: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203); *see Action Indus., Inc.*, 358 F.3d at 340 n.8; *Seagen, Inc.*, 546 F. Supp. 3d

at 521.  After balancing these factors, if "the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315.

> 2.    Private Interest Factors

> a.    The Relative Ease of Access to Sources of Proof

The first factor focuses on the locations of sources of proof, such as documents and physical evidence.  In *Volkswagen II*, the Fifth Circuit explicitly rejected the argument that this factor is obsolete because advances in technology have lessened the burden of exchanging documents.  *See Two-Way Media LLC v. AT & T, Inc.*, 636 F. Supp. 2d 527, 532 (S.D. Tex. 2009) (citing *Volkswagen II*, 545 F.3d at 316).  "That access to some sources of proof presents a less inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316; *accord Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009).  Therefore, "almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd.*, 639 F. Supp. 2d at 767; *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 765 (E.D. Tex. 2009).  When the evidence is not physical in nature, this factor is not particularly relevant. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).

In the case at bar, both parties concede that the evidence is in electronic form.  If the discovery is stored electronically, it can just as easily be accessed in Beaumont, Texas, as in California.  *Id.* (holding that the vast majority of the evidence was electronic, and therefore equally accessible in either forum); *see Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1000

(E.D. Tex. 2009) (noting that "electronic information can be accessed conveniently in any number of locations"). Moreover, Dutra asserts that live testimony is not needed for this case because this action exclusively involves constitutional claims. Even if live witness testimony is required in this case, Defendants fail to specify particular individuals in the Northern District of California who possess relevant information, referring generally to Dutra's "company and employee witnesses" and admitting that "[t]here is no obvious most convenient location for a witness hearing." The court therefore finds that this factor is neutral.

> b.    Availability of Compulsory Process to Secure the Attendance of Witnesses

Another factor to be considered is the availability of compulsory process to insure the attendance at trial of unwilling or hostile witnesses. *Def. Distributed*, 30 F.4th at 434; *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 213 (5th Cir. 2010); *Volkswagen II*, 545 F.3d at 316; *Seagen, Inc.*, 546 F. Supp. 3d at 531; *Affinity Labs of Tex.*, 968 F. Supp. 2d at 857; *Eliserio v. Floydada Hous. Auth.*, 388 F. Supp. 2d 774, 776-77 (S.D. Tex. 2005). Notably, however, the availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify. *In re Planned Parenthood*, 52 F.4th at 630. Defendants have not indicated that a transfer is necessary to compel the attendance of any witnesses, and compulsory process likely would be unnecessary for the employees of Dutra or Region 20 investigators who may testify. *See Cub Club Inv., LLC v. Apple, Inc.*, No. 6-20-CV-00856-ADA, 2021 WL 12300180, at *3 (W.D. Tex. Sept. 7, 2021) ("As party witnesses almost invariably attend trial willingly, '[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor.'" (quoting *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-00513, 2020 WL 6439178, at *4 (W.D. Tex.

Mar. 17, 2020))).  Furthermore, there is no allegation that any potential witness would be either

unwilling or unable to travel to Beaumont for trial.  *See Eliserio*, 388 F. Supp. 2d at 777.  The

court finds that this factor is neutral.

c.    Convenience and Cost of Attendance for Willing Witnesses

The relative convenience of the witnesses is often recognized as the most important factor

to be considered when ruling on a motion under § 1404(a).  *Volkswagen II*, 545 F.3d at 316 (citing

*Volkswagen I*, 371 F.3d at 203); *Seagen, Inc.*, 546 F. Supp. 3d at 531; *Affinity Labs of Tex.*, 968

F. Supp. 2d at 857; *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 690 (W.D. Tex.

2013); *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009).  "In

terms of witnesses, venue is considered convenient in the district or division where the majority

of witnesses are located."  *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D.

Tex. 2002) (citing *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 657 (E.D. Tex. 1999));

*accord Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). In

considering the availability and convenience of witnesses, a court must concentrate primarily upon

the availability and convenience of key party or non-party witnesses.  *Qualls v. Prewett Enters.

Inc.*, 594 F. Supp. 3d 813, 822 (S.D. Tex. 2022); *PuraPharm Int'l (H.K.) Ltd. v. PurePharma*,

No. H-14-3181, 2015 WL 1808582, at *3 (S.D. Tex. Apr. 20, 2015); *Shoemake*, 233 F. Supp.

2d at 832.  Indeed, "[t]he convenience of one key witness may outweigh the convenience of

numerous less important witnesses."  *Hous. Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp.

2d 663, 668 (S.D. Tex. 1999); *accord Qualls*, 2022 WL 889034, at *6; *PuraPharm Int'l (H.K.)

Ltd.*, 2015 WL 1808582, at *3.  Moreover, it is the convenience of non-party witnesses, rather

than that of party witnesses, that is more important and is accorded greater weight in a transfer

of venue analysis. *Qualls*, 2022 WL 889034, at *6; *Healthpoint, Ltd.*, 939 F. Supp. 2d at 687-88; *Two-Way Media LLC*, 636 F. Supp. 2d at 528; *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 762 (N.D. Tex. 2009).

"[W]hether a transfer is sought for key party or non-party witnesses, the moving litigant must make more than a general allegation that the key witnesses are inconveniently located." *Mohamed*, 90 F. Supp. 2d at 775 (citing *Robertson*, 42 F. Supp. 2d at 657); *accord Paschal*, 2022 WL 1284565, at *4; *BNSF Ry. Co.*, 667 F. Supp. 2d at 711; *Eliserio*, 388 F. Supp. 2d at 777 n.2. "Conclusory allegations are not sufficient—the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include." *Martin v. J.A.M. Distrib. Co.,* No. 1:08-CV-298, 2008 WL 11348011, at *4 (E.D. Tex. Sept. 12, 2008) (quoting *Williams v. Southern Towing Co.*, No. Civ. A. 03–2688, 2004 WL 60314, at *2 (E.D. La. Jan. 8, 2004)); *accord Coe v. Biden*, No. 3:21-CV-168, 2022 WL 1616194, at *2 (S.D. Tex. Mar. 22, 2022); *BNSF Ry. Co.*, 667 F. Supp. 2d at 711. "[V]ague statements about the convenience of unknown and unnamed witnesses are insufficient to convince th[e] Court that the convenience of the witnesses would be best served transferring venue." *Smith v. Colonial Penn Ins. Co.*, 943 F. Supp. 782, 784 (S.D. Tex. 1996) (citing *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 823 (S.D. Tex. 1993)).

Dutra contends, as mentioned above, that live testimony is not needed for this case because this action exclusively involves constitutional claims. In the event that live testimony is required, Defendants fail to persuade the court that this factor weighs in favor of transfer. While Defendants claim that witnesses "are more likely to be found" in the Northern District of California, they fail to name any potential key witnesses who may be called to testify at trial or

23

to provide a statement concerning what their testimony would include.  Furthermore, even if the former boat operators have relevant information concerning this case, they appear to live in either Alabama, Florida, or North Carolina, making the cost of attendance no more convenient in the Northern District of California than in the Eastern District of Texas.  Additionally, Defendants assert that MM&P officials reside in Maryland.  If anything, the cost to attend court for the potential witnesses would likely be lower in Beaumont due to the proximity of Texas to these states compared to California as well as the average price of accommodations and meals.[9]  Defendants even concede that this factor is neutral as to the laid-off employees, as they "appear to be quite distant from all plausible forum locations."

As the movants, Defendants simply have not met their burden to show that the cost of attendance for witnesses is clearly more convenient in the Northern District of California than in the Eastern District of Texas.  Moreover, Defendants cannot meet their burden by simply stating that "[t]here is no obvious explanation why it would be more convenient for Dutra to litigate this case in Texas."  *See United Servs. Auto. Ass'n*, 2023 WL 2871060, at *1 ("[R]espect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to 'clearly demonstrate' that the proposed transferee forum is 'clearly more convenient' than the forum in which the case was filed.").  The court finds that this factor weighs slightly against transfer.

_____

[9] The cost of accommodations in San Francisco, California, can range from $154 to $288 per night.  BUDGET YOUR TRIP, https://www.budgetyourtrip.com (last visited Aug. 25, 2025).  By comparison, the average cost of accommodations in Beaumont, Texas, is $94 to $175 per night.  *Id.*  Additionally, the average cost of meals for one day in San Francisco is $79, whereas the average cost of meals for one day in Beaumont is $45.  *Id.*; NUMBEO, https://www.numbeo.com/cost-of-living (last visited Aug. 25, 2025).

d.    Other Practical Problems and Considerations

Regarding other practical problems and considerations, the place of the alleged wrong is an important factor in the transfer analysis, and, here, it dictates against a transfer of venue. *See Leblanc v. United States*, No. 09-0343, 2009 WL 2356437, at *2 (W.D. La. July 28, 2009) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791 (S.D. Tex. 2005)); *Frederick v. Advanced Fin. Sols, Inc.*, 558 F. Supp. 2d 699, 702 (E.D. Tex. 2007).  While Defendants contend that it would be more convenient for them to litigate in the Northern District of California because some of the Defendants reside there and it is where NLRB Region 20 is located, it cannot be said that the Northern District of California is clearly a more convenient forum. *See Spiegelberg*, 402 F. Supp. 2d at 791; *Hanby*, 144 F. Supp. 2d at 678.  The fact that litigating the case in the Northern District of California may be more convenient for Defendants is not enough to justify transfer. *In re Planned Parenthood*, 52 F.4th at 629; *Def. Distributed*, 30 F.4th at 433.  As previously noted, a substantial part of the events giving rise to Dutra's claims took place in the Eastern District of Texas.  In this instance, the fact that MM&P's organizational efforts, the *Stuyvesant* elections, and two of the layoffs occurred in this district weigh heavily in favor of this forum. *See Volkswagen I*, 371 F.3d at 205 (holding that it is "incumbent upon the Eastern District Court to consider . . . the site of the accident").

Moreover, it is well established that "[t]he plaintiff has the right to select the forum in which the lawsuit he initiates is to proceed." *FTC v. Multinet Mktg., LLC*, 959 F. Supp. 394, 396 (N.D. Tex. 1997) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Time, Inc.*, 366 F.2d at 698); *accord Atl. Marine Constr. Co.*, 571 U.S. at 63; *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).  In determining the propriety of a transfer of venue under

25

§ 1404(a), a plaintiff's choice of forum "is not an independent factor within the *forum non conveniens* or the § 1404(a) analysis." *Volkswagen II*, 545 F.3d at 314 n.10. While not a distinct factor in the transfer of venue analysis, a plaintiff's choice of venue "is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *Id.* "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* at 315; *Two-Way Media LLC*, 636 F. Supp. 2d at 531. Thus, this method of analysis "directly manifests the importance" that must be given the plaintiff's choice. *Volkswagen II*, 545 F.3d at 314 n.10. Unless the evidence is "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508; *see Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020); *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987). Defendants have made no such showing here. A substantial part of the events that led to the ULP Complaint and challenged administrative proceedings took place in the Eastern District of Texas. Hence, Dutra's choice of a Texas forum could not be viewed as unduly oppressive or vexatious and, therefore, should not be disturbed. *See Martin*, 2008 WL 11348011, at *7.

Furthermore, Defendants' assertions regarding the location of counsel and the status of their *pro hac vice* appearances has no bearing on the court's venue analysis. The Fifth Circuit has held that "the convenience of counsel," which previously was considered, "is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 305 (5th Cir. 2024) (quoting *Volkswagen I*, 371 F.3d at 206); *In re Horseshoe Entm't*, 337 F.3d at 434 ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue."); *see Duckworth*

*v. Tractor Supply Co.*, No. 2:22-cv-054-JRG-RSP, 2022 WL 2070610, at *2 (E.D. Tex. June 8, 2022). Thus, the location of counsel is irrelevant to the convenience of the parties. *In re Chamber of Com.*, 105 F.4th at 305 ("When the location of counsel is brought up in a context where transfer would make litigating the case more or less convenient for the attorneys, it is irrelevant to consider—and thus improper to consider—because it does not affect the convenience of the parties.").[10]

Dutra additionally asserts that MM&P's recent Motion to Intervene does not change this determination. The court agrees. MM&P chose to intervene in the Eastern District of Texas, so its appearance does not affect this analysis. *See Team Worldwide Corp. v. Walmart Stores., Inc.*, 287 F. Supp 3d 651, 659-61 (E.D. Tex. 2018) (holding that intervener cannot question the propriety or convenience of a venue they chose to enter and collecting authority on an intervenor's waiver of any potential venue objections). Because the Eastern District of Texas is the place of the alleged wrong and the district in which Dutra chose to bring its claim, the court finds that this factor weighs against transfer to the Northern District of California.

      3.   <u>Public Interest Factors</u>

          a.   <u>Administrative Difficulties Flowing from Court Congestion</u>

In addition to private interest considerations, the court must also consider public interest factors in determining whether a case should be transferred to another district. *Volkswagen II*, 545 F.3d at 315; *Volkswagen I*, 371 F.3d at 203; *see Def. Distributed*, 30 F.4th at 433. One such

---

[10] In any event, the court notes that one of Dutra's attorneys, David Earl James of Sorrels Law, appears to reside in this district and has been admitted to practice in this court since 2001. Additionally, another attorney for Dutra, Audrey Momanaee of Blank Rome, LLP, appears to reside in an adjacent district and has been admitted to practice in this district since 2008.

consideration is the relative congestion of the courts at issue.  *Gilbert*, 330 U.S. at 508; *Volkswagen I*, 371 F.3d at 203; *Seagen, Inc.*, 546 F. Supp. 3d at 532-33; *Frederick*, 558 F. Supp. 2d at 702.  The efficient administration of the court system is vital to all litigants, as well as the public at large.  *Ferens v. John Deere Co.*, 494 U.S. 516, 529 (1990).

The dockets in the Eastern District of Texas are not as congested as those of the Northern District of California.  Statistics maintained by the Administrative Office of the United States Courts reflect that as of March 31, 2025, there were 6,589 cases pending in the Eastern District of Texas, with an average of 824 cases per district judge.  By contrast, in the Northern District of California, there were 13,820 pending cases, with an average of 987 cases per district judge.  Because the judges in the Northern District of California have a heavier caseload than do the judges in the Eastern District of Texas, greater delays are inevitable if the case is transferred.  Thus, transferring this case will only additionally congest the Northern District of California with a case that will further burden that court's judicial resources.  *See Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957 F. Supp. 843, 844 (E.D. Tex. 1997).  Moreover, Defendants have agreed that docket congestion favors the Eastern District of Texas compared to the Northern District of California.  Accordingly, comparative docket congestion supports retaining the case in this forum.

### b.    Local Interest in Having Localized Disputes Decided at Home

Another element to be considered is the local interest in having localized controversies decided at home. *Volkswagen II*, 545 F.3d at 317-18; *Volkswagen I*, 371 F.3d at 203; *Def. Distributed*, 30 F.4th at 435; *Frederick*, 558 F. Supp. 2d at 702; *Spiegelberg*, 402 F. Supp. 2d at 792.  Local interest "regards not merely the parties' significant connections to each forum writ large, but rather the significant connection between a particular venue and the events that give rise

28

to a suit." *Def. Distributed*, 30 F.4th at 435; *Patrick Henry Med., LLC v. Prochant, Inc.*, No. 4:21-cv-00430, 2021 WL 5578680, at \*7 (E.D. Tex. Nov. 29, 2021) (quoting *R2 Sols. LLC v. Target Corp.*, No. 4:21-cv-92, 2021 WL 2550908, at \*5 (E.D. Tex. June 22, 2021)).

Defendants contend that this factor supports transfer because Dutra's San Rafael office "appears to have been the locus of the actions alleged to have been taken by Dutra managers and agents" and the "Region 20 office that investigated and is prosecuting the ULP Complaint is based in the Northern District of California, which is also where the ALJ is likely to officiate." Dutra contends that substantial events giving rise to the NLRB proceedings occurred in the Eastern District of Texas. Generally, when the issue raised is a question of federal constitutional law, one federal district will not have a greater local interest in the case than another federal district. *See Alpha Servs.*, 2023 WL 6795545, at \*6 (finding that neither Louisiana nor Idaho had a local interest in having the case decided at home because "the only issue raised is a question of federal constitutional law"). In addition, "local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests." *Ave. Innovations Inc. v. E. Mishan & Sons, Inc.*, No. 5:15CV166-RWS-CMC, 2016 WL 11804703, at \*5 (E.D. Tex. Apr. 4, 2016) (quoting *Volkswagen II*, 545 F.3d at 318).

Although an argument can be made that the Eastern District of Texas has an interest in regulating the activities of businesses that frequently operate within its borders, the Northern District of California similarly has an interest in regulating businesses that are located within its bounds. Thus, even if the court considers this district to have a local interest in regulating business operations, the competing interests are equal in weight. This factor is therefore neutral.

29

c.    Familiarity of the Forum with the Law and Avoidance of Unnecessary Problems of Conflict of Laws

Both parties agree that factors three and four—familiarity of the forum with the law that will govern the case and avoidance of unnecessary problems of conflict of laws or in the application of foreign law—have little bearing in this matter.  There is no difference between the Northern District of California and Eastern District of Texas in terms of familiarity with the law that governs the case, as Dutra's claim arises under federal law.  *See Shoemake*, 233 F. Supp. 2d at 835.  The claims in this case are grounded in federal law and the Constitution, which federal courts are on equal footing to resolve.  *See, e.g.*, *Hanby*, 144 F. Supp. 2d at 679.  Thus, the Northern District of California is not clearly more convenient regarding these factors, which are neutral to the transfer analysis.

III.    Conclusion

Having found that a substantial part of the events giving rise to the action occurred in the Eastern District of Texas, Dutra's choice of venue is proper under § 1391(e).  Furthermore, Defendants have failed to meet their burden to show that a balance of the relevant factors and circumstances clearly favors a transfer to the Northern District of California, as most factors are neutral or weigh against transfer.  While venue may be proper in the Northern District of California, Defendants have failed to establish that it is clearly a more convenient forum than the Eastern District of Texas, such that a transfer of venue is warranted.  Under the circumstances, Dutra's choice of forum must control.

Accordingly, Defendants' motion to transfer venue is DENIED.  This action shall remain on the docket of this court in the Eastern District of Texas.

SIGNED at Beaumont, Texas, this 27th day of August, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE